UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
DM VERO LLC operating as "VERO",
JUDE DENNIS MAROVIC,
MARKO MATIC,

                              **COMPLAINT**

                  Plaintiffs,          Jury Trial Demand

    -against-

BENJAMIN OHEBSHALOM,
SKY MANAGEMENT,
ALLIANCE 77, LLC.,
JOHN DOES 1-5,

                  Defendants.
-------------------------------------------------------------x

        Plaintiffs by and through their attorneys, Robert Blossner and Vik Pawar, Esqs., allege the following against the defendants.

### PRELIMINARY STATEMENT

1. The Covid-19 pandemic which in the spring of 2020 took root in the City of New York grossly and negatively affected the City's business community. As the pandemic lingered on, the restaurant industry in particular suffered grievously. Plaintiff is the owner of a small business which operates under the name of "Vero". Despite the pandemic's effects, Vero had been able to hang on and stay open. Plaintiff managed to keep Vero open due to it's loyal clientele and its owner having to dig into his savings. Unfortunately, the unsettling events caused by the pandemic were not the only source of Vero's problems. Vero is located in and a tenant in a building owned and operated by the Defendants. The Defendants who own several other high-rise/mixed-use buildings in New York City sought to cause the closing and destruction of whatever was left of Vero and its owners' valiant efforts to keep the restaurant afloat.

1

2. Plaintiff brings this lawsuit under The Racketeer Influenced Corrupt Organizations Act (commonly referred to as "RICO") because defendant's conduct falls squarely within RICO and plaintiff is entitled to relief under said statute and under state law.

## JURISDICTION

3. This Court has jurisdiction over the present action pursuant to 28 U.S.C. § 1331 and 18 U.S.C. §1961 *et seq*. This Court has supplemental jurisdiction over the Plaintiff's state-law claims pursuant to 28 U.S.C. §1367(a), as such claims are related to the RICO claims and form part of the same case or controversy.

## VENUE

4. Venue is proper in this district pursuant to 18 U.S.C. §1965(a) and 28 U.S.C. § 1391(b). The Defendants reside in and transact their affairs in New York County. Furthermore, all acts giving rise to the claims occurred in New York County.

5. Plaintiff DM Vero LLC operates a small wine bar and offers tapas to its customers. Plaintiff goes by the trade name "Vero" and is located at 1483 Second Avenue, New York, New York 10075. Plaintiff Jude Dennis Marovic is the owner of Vero. Plaintiff Marko Matic is a manager/host of Vero. All three plaintiffs are collectively referred to as "Plaintiff" throughout this lawsuit unless otherwise noted.

6. Defendant Benjamin Ohebshalom ("Ohebshalom") is an individual who owns and operates several real properties in New York City and also owns defendant Sky Management ("Sky"). Ohebshalom resides at 11 Cow lane, Kings Point, New York 11024 but works out of Sky's office.

2

7. Defendant Sky's principal place of business is 226 East 54th street, Suite 402, New York, New York 10022.

8. Defendant Alliance 77th operates out of the same location as defendant Sky.

9. Defendants John Doe 1-4 are agents of defendants Ohebshalom, and Sky whose identities are currently unknown.

## FACTUAL BACKGROUND

10. In June 2018, Plaintiff purchased the business "Vero" for a certain sum. The purchase included the remainder of the lease and an option for an additional period of lease that ends in May 2026.

11. As part of the inducement for the purchase, defendants acknowledged the arrangement and consented to plaintiff's assumption of the lease.

12. Defendants own and operate the building in which Vero is located as well as several adjoining buildings.

13. Defendants ultimate goal appears to include profit motivation.

14. In or about August 2019, defendants approached plaintiff and offered to release plaintiff from its lease. Said approach was in person and verbal. When defendants were rebuffed by plaintiff, defendants offered to buy plaintiff out of the remainder of its lease.

15. Defendants stated in sum and substance that a major developer was going to demolish the buildings (including the building where Vero is located) and that plaintiff should accept the offer because it would not be able to operate profitably for the remainder of the lease due to noise, smell, lack of sidewalk and other inconvenience that would disrupt Vero's business.

16. Thereafter, defendants either entered into agreements with the other establishments in the adjoining buildings which defendants owned for the other businesses to either vacate in

3

return for a sum of money or defendants refused to renew such leases upon termination thereof. The end result is that all commercial tenants vacated the premises except Vero (which had a lease in place).

17. Plaintiff has the lawful right to occupy the said premises under the lease which is at least through May 2024 and possibility for an additional four years.

18. Apparently, plaintiff's legal interests are in direct conflict with defendants' financial profits in the future.

19. Based upon statements by defendants which included derogatory comments as to plaintiff's manager, Marko Matic, there may well be other reasons that defendants worked out agreements with the other commercial tenants but not with plaintiff.

20. Whatever Defendants' reasoning be it greed, discrimination or otherwise, defendants have embarked upon and engaged in a series of illegal activities that have clearly been designed to and did cause plaintiff financial, economic, and psychological harm, such acts by defendants included threats of physical injury to Mr. Matic, the business, Vero's employees and patrons as well as the actual destruction and theft of plaintiff's property.

21. Defendants' illegal actions included but were not limited to the following:

   a. When plaintiff refused defendants' demand to give up the remainder of its lease, defendants verbally informed plaintiff that "he would be sorry, because defendants have 'connections' and that plaintiff would regret their decision and that defendants would come after plaintiff's manager, owners personally as well as their property." One of plaintiff's employees quit because of fear for her safety.

4

b.  Within a few days of the above veiled threat, defendants caused defendant John Doe 1 to personally visited plaintiff's manager Mr. Matic at plaintiff's premises during late hours of the evening and told him "You better give up this place or you will end up in the back of a garbage truck." Plaintiff reported this incident to the 19th precinct of the NYPD.

c.  After the adjoining tenants vacated their respective premises, defendants posted fake posters/signs of "rat poison" and "danger" and "asbestos" all over the windows of the adjoining premises thus carrying through on their threat to instill fear upon Vero's employees, owners and patrons. Defendants also broke into plaintiff's storage room. Ohebshalom admitted to plaintiff that he directed the superintendent to break the storage room door. As a result, cases of liquor bottles and bicycles in the storage room that were stolen. Ohebshalom also caused substantial damage to the front door of Vero.

d.  During the summer months, defendants and its agents unlawfully cut off ventilation and pipes that provided air-conditioning to plaintiff's business.

e   During the winter months, defendants from time to time cut off heating pipes leading to plaintiff's business.

f.  In the course of trying to ameliorate the effect of the pandemic The Governor of the State of New York ordered a moratorium on commercial evictions. Despite such decree by the State, the defendants used the threat and actually filed eviction and ejectment proceedings in an effort to intimidate and threaten plaintiff as well cause them economic harm.

        Ohebshalom actually informed plaintiff that "even if we lose every case, we bring in Court, we have attorneys on retainer who will make you spend untold amounts of money just on legal fees."

g. When the Governor permitted small businesses such as plaintiff to allow for outdoor dining, plaintiff obtained the necessary permits and spent tens of thousands of dollars to build a tiny, cozy area outside the restaurant where its patrons could consume beverages and food in an effort to help retain its staff and muster some income during the pandemic.

h. In the course of its continued quest to intimidate plaintiff and generate profits for its own self-interests, defendants caused defendants John Doe 2-4 to bulldoze Plaintiff's outdoor enclosure in the in early morning hours. This act by defendants completely demolished plaintiff's outdoor setting resulting in severe economic harm including the cost of construction and loss of income. Ohebshalom sat in his car while the structure was bulldozed. Ohebshalom had warned plaintiff the night before that he would destroy the structure.

i. Prior to bulldozing plaintiff's outdoor dining enclosure, Ohebshalom came to Vero on several occasions and personally removed or destroyed trees and other decorations that were located upon and outside of plaintiff's premises. Ohebshalom also threw garbage in front of plaintiff's establishment.

j. After the destruction of plaintiff dining enclosure, defendant Ohebshalom personally visited the plaintiff's manager, Mr. Matic and verbally

6

      threatened plaintiff's manager about his safety causing Plaintiff to once again notify the 19th precinct of the NYPD.

k. Subsequent to plaintiff's outdoor enclosure being bulldozed and defendant's personal visit and threat, defendants' counsel was noticed of his client's illegal acts, threats and that such "self-help" was prohibited under both NYC and NYS laws. Defendants' counsel then responded by claiming that his client's acts had not been improper.

l. Plaintiff filed a complaint of harassment and criminal mischief with the 19th precinct of the NYPD.

m. Plaintiff sought to continue generating whatever income it could during the struggling times by once again expending large sums of money to build a structure to replace the one defendants had destroyed. Said structure was once again for the purpose of accommodating patrons while indoor dining was either limited or banned during the cold months of 2020-21.

n. Once again, plaintiff and its employees spent a large sum of money from his pockets, time and effort in an attempt to make the establishment a cozy and welcoming space for its patrons, help keep some of its staff employed and to salvage whatever income that could be obtained during the difficult time of the pandemic era.

o. Astonishingly defendants' counsel apparently gave defendants a green light to once again bulldoze Plaintiff's outdoor establishment. This time, in an apparent attempt to avoid personnel detection, defendants and its agents tried to cover a surveillance camera that was recording the demolition.

    Defendants and its agents placed a cloth or tape over the camera which they removed after the demolition was complete.

 p. Plaintiff had expended over seventy-five thousand dollars for the lumber, fittings, paint, decorations and insulation needed for the construction of the outdoor enclosures. After demolishing the enclosures, defendants removed said items thus depriving plaintiff of their reuse and proper possession. However, defendants and its agents could not get away with their conduct even though they covered the camera. Defendants foolishly his, locked up and kept the lumber, fittings, and other materials they had destroyed and dismantled inside the premises adjoining plaintiff's business. Defendants not only who own the premises adjoining to plaintiff, but defendants and its agents, are the only one who had access, custody control and keys to the adjoining property, foolishly kept plaintiff's destroyed structure inside the adjoining property. As a result, Plaintiff filed a grand larceny complaint with the 19th precinct of the NYPD.

22. All of the above and other acts by the defendants, their agents and employees were a calculated scheme to deprive plaintiff of income, threaten plaintiff with physical harm and cause psychological injuries.

### AS AND FOR THE FIRST CAUSE OF ACTION
(18 U.S.C. § 1962(c) - RICO)

23. Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

24. Defendants by their personal and directed actions have engaged in an enterprise whose activities affect interstate commerce.

25. Upon information and belief, the above-stated Defendants agreed to and did conduct and participate in the enterprise's affairs through a pattern of racketeering activity by engaging in repeated acts of extortion, threats, intimidation, theft, larceny obstruction of justice and fraud. The participants of the enterprise include two corporate entities (Sky, 77 Alliance) and at least five individuals (Ohebshalom and John Does 1-4). The enterprise is distinct from each Defendant, and the enterprise has an ascertainable structure. Furthermore, each Defendant that participated in the enterprise is a "culpable person" pursuant to 18 U.S.C. § 1961(3).

26. Upon information and belief, the aforementioned Defendants all participated in the enterprise scheme through a pattern of conduct that involved extortion, threats, intimidation, theft, larceny, obstruction of justice and fraud through electronic mail and cellular telephone calls, the termination of utilities (by using calls or mailings). Upon information and belief, all acts were taken in furtherance of the enterprise scheme willfully and with knowledge that the actions were not legal; and the acts had an effect on interstate commerce. Upon information and belief, the pattern of conduct is ongoing and has taken place during the course of at least 2 years.

27. With respect to extortion component of the pattern, the Defendants engaged in or participated in a scheme intended to deprive the Plaintiff of its possessory right to property by using repeated threats of economic and/or physical harm; and Defendants utilized threats of violence to person and property as part of a scheme intended to deprive plaintiff of their and property rights. The Defendants attempted to use and did in fact use the Plaintiff's reasonable fear of harm in an attempt to cause plaintiff to relinquish to defendants property for which the Plaintiff had a possessory right.

28. Defendants engaged in fraud and mail fraud pursuant to 18 U.S.C. §§ 1341 and 1343 in an attempt to extort and intimidate plaintiff. Defendants furthered said attempts to extort

and intimidate plaintiffs by sending frivolous untenable and unlawful lawsuit notices through the mail and emails which defendants then and there knew to be contrary to emergency rent and eviction regulations. Upon information and belief, the said Defendants engaged in a plan or scheme to intentionally defraud and otherwise obtain the property of the Plaintiff; it was foreseeable that mail and wires would be used in the course and implementation of said scheme and plan, and they were used.

29. In sum, the pattern of racketeering activity was comprised of both extortionate and fraudulent acts that were concerted, related, and part and parcel of the Defendants regular (and unlawful) way of doing business.

**AS AND FOR THE SECOND CAUSE OF ACTION**
(Assault and Harassment)

30. Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

31. Defendants engaged in conduct that constituted assault.

32. Defendants engaged in conduct that was harassing to plaintiff and its employees.

33. As a result of defendants' assault and harassment, plaintiff and its employees felt threatened for their safety and well-being.

**AS AND FOR THE THIRD CAUSE OF ACTION**
(Tortious Interference with Business)

34. Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

35. Plaintiff has a valid contract with the defendants.

36. Defendants and its agents and counsel have actual knowledge of the contract.

37. Defendants and its agents' conduct interfered with the contract and breached the contract.

38. Defendants' conduct was intentional, improper and illegal under city, state and

federal laws.

39. As a result of defendants' conduct, plaintiff's rights to engage in its business was disrupted and plaintiff suffered injuries.

## AS AND FOR THE FOURTH CAUSE OF ACTION
(Conversion)

40. Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

41. Defendants (acting in concert and cooperation with one another) converted property belonging to the Plaintiff. The Plaintiff had a right to possession of the premises; and the Plaintiff had a right to possession of the personal items, business property and other items contained in and around the premises.

42. Defendants interfered with the Plaintiff's right to possession of property a) by attempting to forcibly ejecting him from the premises, b) by engaging in threats against the Plaintiff that interfered with his right to possession of the property, and c) by outright taking items from in and around the premises and keeping it for themselves in their location next to plaintiff's business.

43. As a result of defendants' conversion, plaintiff suffered economic injuries.

## AS AND FOR THE FIFTH CAUSE OF ACTION
(Trespass)

44. Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

45. Plaintiff had the right for quiet enjoyment and use of the premises.

46. Defendants without the knowledge, permission or consent of the plaintiff illegally entered plaintiff's business.

47. As a result of defendants unlawful trespass, plaintiff suffered injuries.

### AS AND FOR THE SIXTH CAUSE OF ACTION
(Obstruction of Justice)

48. Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

49. Defendants attempted to conceal their illegal conduct by concealing the surveillance video and disguising themselves.

50. This concealment prevented law enforcement officials to ascertain the truth and defendants' underlying unlawful conduct.

51. As a result, defendants obstructed justice and injured plaintiff.

### AS AND FOR THE SEVENTH CAUSE OF ACTION
(42 U.S.C. Sec 1985 - Conspiracy)

52. Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

53. Defendants engaged with one and another and conspired to violate plaintiff's rights.

54. Defendants met with one and another devised a plan, executed a plan in furtherance of the conspiracy.

55. As outlined in the detailed factual version in this complaint, defendants intimidated, threatened and engaged in conduct that denied plaintiff's the civil rights guaranteed under the United States Constitution and the Equal Protection of the laws.

56. Defendants conspiracy plan included communicating by email, phone, text messages and in person in an effort to violate plaintiff's rights causing plaintiff injuries.

### AS AND FOR THE EIGHTH CAUSE OF ACTION
(Violation of NYS Law)

57. Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

58. On or about March 2020, the Governor of the State of New York signed an executive order to address the Covid-19 pandemic.

12

59. As part of the executive order which operates as a law, the Governor entered a moratorium meant to assist small business such as the plaintiff.

60. As part of the law, the commercial landlords were expressly prohibited from engaging in eviction proceedings for non-payment of rent by the tenant-business such as the plaintiff.

61. Despite the existence of this law, defendants engaged in extortive, intimidating and threatening behavior by engaging the NYS courts and the judicial system to eject plaintiff.

62. Defendants motive was to further continue their pattern of racketeering activity to further their financial interests.

63. As a result of defendants' unlawful conduct, plaintiff suffered injuries.

**In conclusion:**

64. Plaintiff has outlined specific acts throughout this complaint which shows that defendants engaged in activities that give rise to RICO claims and other causes of actions.

**WHEREFORE**, Plaintiff respectfully requests the following:

1. Awarding the Plaintiff treble damages, costs, and attorneys' fees pursuant to 18 U.S. Code §1962(c) against the defendants jointly and severally.

2. Awarding the Plaintiff statutory damages, actual damages, costs, and attorneys' fees against all named Defendants pursuant to New York General Business Law §349;

3. Awarding the Plaintiff damages, costs, and attorneys' fees for intentional torts by the defendants;

4. Awarding the Plaintiff compensatory damages (including punitive damages) to be determined by the jury;

5. Awarding plaintiff damages under NYC and NYS laws;

6. Granting such other and further relief that the Court may deem just and proper.

**Dated:** March 6, 2021
New York, New York 10007

Respectfully submitted,

Vik Pawar (VP9101)
Robert Blossner (RB0526)
20 Vesey Street, Suite 1410
New York, New York 10007
www.pawarlaw.nyc